PER CURIAM.
The Special Disability Trust Fund (Fund) appeals an order of the judge of compensation claims (JCC) ruling that the claim filed by the employer and carrier (E/C), Low Cost Transmission and American States Insurance Co., was timely and ordering the Fund to reimburse the carrier for 60% of all excess permanent compensation paid to the employee, George Douglas, Jr. We agree with the Fund that the JCC’s ruling was erroneous and, therefore, we reverse.
Following a compensable work-related injury to Mr. Douglas’ back on May 11, 1989, the E/C began paying him temporary total disability (TTD) benefits. His physician, Dr. *1219 R. Husten Babcock, declared him to be at maximum medical improvement (MMI) with a permanent impairment rating of 8% on April 15, 1990. The E/C then began paying permanent wage loss benefits to Douglas on May 11, 1990. The parties dispute how long the employer continued to pay wage loss benefits, but they agree that the employer reverted to paying TTD benefits in March of 1992.
Dr. Charles Finn performed spinal fusion surgery on Douglas on July 2, 1992. Afterward, Dr. Finn found that he reached MMI on December 23,1992, with a 13% permanent impairment. The employer then resumed paying permanent benefits that same month.
On May 5, 1993, the E/C and Douglas settled future claims for a lump sum amount and agreed that medical claims would continue to be paid on a periodic basis. Then, on December 6, 1993, the E/C filed a Notice of Potential Claims with the Fund. The accompanying Proof of Claim stated that the E/C had first paid permanent benefits on January 14, 1993. The Fund originally accepted this date as accurate and made an offer of reimbursement. However, it later determined that the E/C had actually first begun paying permanent benefits on May 11, 1990. The Fund therefore rescinded its offer, deeming the claim untimely.
Following a hearing on the matter, the JCC determined that the last date of MMI, as stipulated by the E/C and Douglas, was December 23, 1992, and that the claim filed on December 6, 1993, was therefore timely under section 440.49(2)(g), Florida Statutes (1987). She ordered the Fund to reimburse the carrier for 60% of all excess permanent compensation paid.
The JCC relied on the wording of section 440.49(2)(g), which provides that a claim for reimbursement is time-barred unless a notice of claim is filed “within two years after the date the employee last reached maximum medical improvement, or within two years after the date of the first payment of compensation for permanent total disability, wage loss, or death, whichever is later.”[1] Applying the language of this portion of the statute, the JCC concluded that, since the last MMI date was December 23, 1992, this was the controlling date for purposes of a timeliness determination. She then went on to conclude that, based on this second MMI date, the claim was timely under the statute.
The Fund argues that case law from this court interpreting the statute makes clear that the Notice of Claim in the present case was untimely, because it was not filed within two years of the initial MMI date. The E/C argue that the wording of the statute, which refers to the “date the employee last reached maximum medical improvement,” (emphasis added) clearly mandates that the December 23rd date is the proper MMI date to use. However, we agree with the Fund that our previous interpretations of section 440.49 clearly indicate that the JCC erred in concluding that the claim was timely under the statute.
We addressed the issue in Special Disability Trust Fund v. Executone of Central Florida, 670 So.2d 143 (Fla. 1st DCA 1996), in which we held that the E/C’s claim for reimbursement was time-barred because it had been filed more than two years after the initial date of MMI. This was so despite the fact that the claimant had subsequently undergone further treatment for his injury and a later MMI date had been expressed. We explained the reasoning behind our ruling:
Section 440.49(2)(g) is a non-claim statute and clearly bars any right to reimbursement unless the claim is filed within the statutory period, [citation omitted] The employee reached MMI on April 3, 1988. The E/C did not contest the opinion that the employee was MMI and made the first payment of permanent compensation in the form of wage loss on or around May 3, 1988. Accordingly it was the carrier’s responsibility to notify the Fund in order to protect the Fund against stale claims and to provide an opportunity for prompt investigation of the claim. Once the two- *1220 year period after the date of MMI expired, the claim could not be revived by the fact that a different MMI date was subsequently expressed. Special Disability Trust Fund v. Champion Int’l, 584 So.2d 619 (Fla. 1st DCA 1991); Special Disability Trust Fund v. Florida Power Corp., 558 So.2d 130 (Fla. 1st DCA 1990). Similarly, once the two year period after the first payment of wage loss benefits had expired, the claim could not be revived by payment of a different type of permanent compensation.
Id. at 145.
Executone and other cases from this court demonstrate that the E/C’s acceptance of a given MMI date is of key importance. In both Executone and American Express v. Special Disability Trust Fund, 694 So.2d 59 (Fla. 1st DCA 1997) we emphasized the fact that the E/C manifested its acceptance of the original MMI date by beginning the payment of permanent benefits. Based on that acceptance, we ruled that the later expressed date of MMI was not the operative date for determining timeliness under section 440.49.
In American Express, the employer and servicing agent filed their claim for reimbursement more than two years after the employee’s initial MMI date. Afterward, another treating physician placed the employee at MMI on a date later than the date of the notice of claim. We ruled that the later MMI did not act to revive the untimely claim and we specifically held that “the voluntary payment of PTD benefits is, in effect, an implied concession of MMI.” We went on to explain why this was so:
“In order to be entitled to any form of permanent impairment benefits, one must, pursuant to law, have already achieved MMI. For whatever reason, the E/SA elected to accept the employee as permanently and totally disabled, knowing full well that in order for him to be eligible for same, a showing of MMI was required. We consider our prior case law precluding an applicant from seeking reimbursement from the Fund to be equally applicable here. The basis for our holdings appears to be similar to the doctrine of equitable estoppel, which recognizes that a person may be precluded from maintaining a position inconsistent with another position which was asserted at the same or a previous time to the prejudice of another, [citation omitted]”
Id. at 60.
Finally, in Special Disability Trust Fund v. Collier Enterprises, 676 So.2d 45 (Fla. 1st DCA 1996) the E/C filed its claim for reimbursement on August 17, 1993, more than two years after the stipulated date of MMI set forth in an approved washout agreement. Nonetheless, the JCC found the claim timely, based on the testimony of the claimant’s physician that the last MMI date was in fact August 9, 1993, just twelve days before the filing of the claim. We overturned the JCC’s ruling, relying in part on Executone and reiterating our interpretation of section 440.49(2)(g) “as requiring that once the two-year period following the date of MMI has expired, the claim for reimbursement cannot be revived by a finding of a different MMI date.” Id. at 46.
Therefore, the E/C’s acceptance of an initial MMI date via the payment of permanent benefits sets the clock running under the statute. Once the E/C manifests its acceptance of an assigned MMI date by beginning the payment of permanent benefits, it has a responsibility to adhere to this date in filing a claim for reimbursement from the Fund. In the present case, the E/C impliedly accepted the earlier MMI date of April 15, 1990, by paying wage loss benefits beginning in May of 1990. Applying this earlier MMI date, we hold that the notice of claim for reimbursement filed in December of 1993 was untimely.
Reversed.
BOOTH, BENTON and PADOVANO, JJ., Concur.

. This Court has explained that tire phrase "whichever is later” in the statute refers to the later occurrence of the first payment of permanent benefits or the date the claimant last reached MMI. See Special Disability Trust Fund v. Executone of Central Florida, 670 So.2d 143 (Fla. 1st DCA 1996).